IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ROBERT LUCAS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:10-cv-00874 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | |
| AMERICAN CLEAN ENERGY SYSTEMS, INC., et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION**

**Mark R. Hornak, United States District Judge**

In this product liability action, Plaintiff Robert Lucas alleges that he suffered cognitive and neurological injuries from workplace exposure to ACES II, a chemical fuel additive mixture manufactured by Defendant Tal Technologies, Inc. and distributed by Defendant American Clean Energy Systems, Inc. ("Defendants").[1] ECF No. 26 at 3-4; ECF No. 193 at 1-2; ECF No. 241-1 at 3-4; ECF No. 241-2 at 3-4; ECF No. 241-3 at 4, 6. The parties have filed cross-motions for summary judgment. ECF Nos. 192, 239.

Defendants[2] argue in their Motion for Summary Judgment that Lucas' claims are barred by the doctrine of issue preclusion (also known as collateral estoppel). They say that causation of Lucas' injuries was fully litigated and conclusively determined in an Ohio workers' compensation administrative proceeding Lucas brought against his then-employer, Oxford Mining Company.

---

[1] The Court notes that it is not reaching any legal conclusions as to whether Tal Technologies is a "manufacturer" or American Clean Energy Systems is a "seller" or "distributor" of ACES II as those terms may be specially used or defined in any potentially applicable laws, rules, or regulations. Those terms are used here solely for ease of reference.

[2] Defendant American Clean Energy Systems filed the instant Motion, ECF No. 239, which Defendant Tal Technologies sought to join. ECF No. 242. The Court approved Tal Technologies' joinder request. ECF No. 269.

Lucas appealed the final disposition of that proceeding to an Ohio trial court, where it was dismissed with prejudice with the agreement of the parties after they reached a settlement. *See* ECF No. 239. Defendants say that either or both of those prior Ohio decisions should have preclusive effect here as to the causation element of Lucas' claims. *See id.*

Lucas argues in his Motion for Partial Summary Judgment that he is entitled to judgment as a matter of law on the issue of Defendants' liability, leaving for determination only the amount of his damages. ECF No. 193 at 1. Lucas says there is no genuine dispute that Defendants violated certain federal regulations, that they were negligent or negligent *per se*, and that such breaches of their duties to him caused him an array of injuries. *See* ECF No. 26 at 1, 3, 5-7; ECF No. 192; ECF No. 193 at 1-2; ECF No. 194 at 10.

For the reasons that follow, both motions will be denied in their entirety.

## I.    <u>BACKGROUND</u>

Plaintiff Robert Lucas worked for Oxford Mining Company as a fuel and lube technician from 2006 to 2008. ECF No. 26 at 3; ECF No. 241 at 2; ECF No. 241-4 at 3; ECF No. 241-7 at 7. His duties included refueling various heavy equipment and machinery, cleaning and changing filters and valves, changing oil, and performing other maintenance work. ECF No. 26 at 3, 6; ECF No. 241-7 at 7, 9. Lucas regularly worked with fuel additive and/or fuel solvent chemicals manufactured by Defendant Tal Technologies, Inc. and distributed by Defendant American Clean Energy Systems. ECF No. 26 at 3-4; ECF No. 241-1 at 3-4; ECF No. 241-2 at 3-4; ECF No. 241-3 at 4, 6. The chemical mixture Lucas complains about in this case is known as ACES II. ECF No. 193 at 1-2. According to Lucas, the chemicals in ACES II included toluene, benzene, and/or other toxic substances, one or more of which caused his injuries. ECF No. 26 at 4-7.

Lucas says ACES II was shipped in 55-gallon drums that he mixed and hand-cranked into five-gallon plastic containers. ECF No. 26 at 3; ECF No. 194 at 8; ECF No. 241-4 at 4-6. On a regular basis, Lucas would pour about 10 gallons of ACES II into 7,500-gallon fuel storage tanks. ECF No. 26 at 3; ECF No. 194 at 8; ECF No. 241-4 at 4-5. To do this, Lucas would use a ladder to climb on top of the 7,500-gallon fuel tanks. ECF No. 241-4 at 5-6, 8. He would then bring up the chemical mixture by rope, remove the cap from the fuel tank, place the funnel into the fuel tank, and pour ACES II into the funnel. ECF No. 241-4 at 5-6. Lucas wore rubber-coated gloves, but he was not provided with, and so he did not wear, a mask or other respiratory protective gear. ECF No. 26 at 3-5; ECF No. 241-4 at 5. When the wind would blow, ACES II would spill onto Lucas, splashing over his hands and arms despite the fact that he was wearing gloves. ECF No. 194 at 8; ECF No. 241-4 at 7-8. Lucas would also inhale fumes from the chemical mixture. ECF No. 241-7 at 25. Lucas says that he did not know the chemical contents of ACES II. ECF No. 194 at 8. But Lucas says that as a result of his mixing and fueling duties, he was exposed to the allegedly toxic substances he now believes were in ACES II on a regular and continuing basis while working for Oxford Mining. ECF No. 26 at 3-5; ECF No. 241-4 at 8; ECF No. 241-7 at 23-24.

In June of 2010, Lucas filed this suit against Defendants, alleging on a number of theories that his exposure to ACES II caused him to suffer from seizures and other cognitive impairments, headaches, severe abdominal pain, and unexplained swelling of his lower extremities. ECF No. 26 at 1, 3, 5-7; ECF No. 193 at 1-2; ECF No. 194 at 10. Lucas says that the drums of ACES II he worked with had no warning labels affixed to them, and that the Material Safety Data Sheets ("MSDS sheets") issued by one or both Defendants failed to warn him of the toxic characteristics of the chemical toluene, its carcinogenic effects, or the extreme risk of seizures, cognitive impairments, and other neurological damage that could result from exposure to it. ECF No. 194 at

3

8-9. Defendants, on the other hand, deny that exposure to ACES II carries a risk of seizures or cognitive impairment. ECF No. 214 at 22; ECF No. 220 at 21-22. Defendants say that all ACES II drums were affixed with warning labels clearly setting forth the dangers of exposure to the chemicals contained therein. ECF No. 214 at 15-17; ECF No. 220 at 14-16. Defendants also say that the MSDS sheets sufficiently warned of any dangers that may have arisen from exposure to ACES II. ECF No. 214 at 20-25; ECF No. 220 at 20-25.

On March 4, 2011, after filing this case, Lucas filed an application for workers' compensation benefits with the Ohio Bureau of Workers' Compensation. ECF No. 241 at 2; ECF No. 251 at 1. Lucas' then-employer, Oxford Mining, defended that action. ECF No. 241 at 4; ECF No. 251 at 2. None of the Defendants in this case were involved in defending Lucas' Ohio workers' compensation benefits action, and Lucas does not allege that they could have been or should have been involved.

In his workers' compensation case, Lucas made essentially the same claim against his employer, Oxford Mining, as he makes against Defendants here: that his exposure to toxic substances in ACES II while working for Oxford Mining caused his various injuries. ECF No. 241 at 2; ECF No. 241-5 at 2; ECF No. 251 at 1. Lucas' initial claim was denied by the Ohio Bureau of Workers' Compensation. ECF No. 241-10 at 2. Lucas appealed that denial to an Ohio Industrial Commission District Hearing Officer. ECF No. 241-10 at 2. The Ohio District Hearing Officer held a hearing on Lucas' claim for workers' compensation benefits in September of 2011. ECF No. 241 at 3; ECF No. 251 at 2. The parties in the Ohio case were given notice of the hearing, which informed them that they attend and "introduce all testimony and evidence pertinent to [their] position on this matter." ECF No. 241 at 4; ECF No. 251 at 2; ECF No. 241-9 at 2.

At the hearing, those parties were represented by counsel. ECF No. 241 at 4; ECF No. 251 at 2. Lucas testified in support of his application for workers' compensation benefits. ECF No. 241 at 4; ECF No. 251 at 2. He claimed that his injuries included headaches, migraines, night tremors, seizures, and incidents where he would lose consciousness and collapse at work. ECF No. 241-7 at 9-11. Lucas also submitted an expert report authored by Dr. Michael Dogali. ECF No. 241 at 3; ECF No. 251 at 1. Dr. Dogali reviewed Lucas' medical records from Wheeling Hospital, West Virginia University Hospital, the Cleveland Clinic, the Ohio Valley Medical Center, and individual doctors, as well as depositions of Lucas and his ex-wife. ECF No. 241-6 at 2. He then surveyed relevant medical literature. ECF No. 241-6 at 2. After all this, Dr. Dogali concluded that as a result of his exposure to ACES-II, Lucas had suffered cerebral degeneration, drug/chemical induced headache, epilepsy, and encephalopathy. ECF No. 241 at 3; ECF No. 251 at 1.

In addition to Dr. Dogali's report, the District Hearing Officer reviewed reports from at least two other doctors, including doctors from the Cleveland Clinic and the Ohio Valley Medical Center. ECF No. 241-7 at 16, 32-34; ECF No. 241-10 at 3. The District Hearing Officer also questioned Lucas, ECF No. 241- at 35, and heard argument from both Lucas' attorney and Oxford Mining's attorney. ECF No. 241-7 at 15-21, 31-34. Following the hearing, the District Hearing Officer granted Lucas' application for workers' compensation benefits, finding that Lucas suffered memory loss, personality changes, headaches, and seizures because of his respiratory and physical exposure to ACES II during his employment with Oxford Mining. ECF No. 241 at 4; ECF No. 251 at 2; ECF No. 241-10 at 2-3.

Oxford Mining appealed the District Hearing Officer's decision to an Ohio Staff Hearing Officer and indicated that it would present additional evidence. ECF No. 241-11 at 2. Another hearing was held in April of 2012. ECF No. 241 at 4-5; ECF No. 251 at 2. The parties were again

provided notice of the hearing, which informed them that they should be present, and that they would—once again—have the opportunity "to introduce all testimony and evidence pertinent to [their] position on this matter." ECF No. 241 at 5; ECF No. 251 at 3; ECF No. 241-14 at 2. Both parties were also represented by counsel at this hearing. ECF No. 241 at 6; ECF No. 251 at 3.

Following the hearing, the Staff Hearing Officer noted that although the parties had submitted extensive medical records, evidence, and professional medical evaluations, the primary support for Lucas' claim of injury came from the report of Dr. Dogali. ECF No. 241 at 6; ECF No. 251 at 3; ECF No. 241-15 at 2-3. Ultimately, the Staff Hearing Officer vacated the decision of the District Hearing Officer and denied Lucas' application for workers' compensation benefits. ECF No. 241 at 6; ECF No. 251 at 3; ECF No. 241-15 at 2-3. In concluding that Lucas was not entitled to such benefits, the Staff Hearing Officer made a factual finding that "the medical evidence on file is not persuasive that any of [Lucas'] alleged conditions are causally related to [Lucas'] job exposure with [Oxford Mining]." ECF No. 241 at 6-7; ECF No. 251 at 3; ECF No. 241-15 at 3. "Significant cerebral and epileptic and headache conditions are alleged, but the medical evidence does not show that any potential exposures with this employer were the causal factor." ECF No. 241 at 6-7; ECF No. 251 at 3; ECF No. 241-15 at 3.

Lucas appealed to another Staff Hearing Officer, indicating that he would not present any additional evidence. ECF No. 241 at 7; ECF No. 251 at 3; ECF No. 241-16 at 2. His appeal was refused in April of 2012. ECF No. 241 at 7; ECF No. 251 at 3; ECF No. 241-17 at 2. This denial of Lucas' appeal was the final administrative decision of the Ohio Industrial Commission. ECF No. 241-19 at 4; ECF No. 241-21 at 4.

From that denial, Lucas filed a second appeal as of right seeking review of the Ohio Industrial Commission decision by the Court of Common Pleas of Coshocton County, Ohio. ECF

No. 241 at 7; ECF No. 241-17 at 2; ECF No. 241-18 at 2-3; ECF No. 241-19 at 4; ECF No. 251 at 3. Lucas was once again represented by counsel in that appeal. ECF No. 241-1 at 3; ECF No. 241-19 at 4; ECF No. 241-20 at 2. Lucas voluntarily dismissed that appeal in January of 2013. ECF No. 241 at 8; ECF No. 241-20 at 2. ECF No. 251 at 3. Then, still represented by counsel, Lucas re-filed his appeal and complaint with the Court of Common Pleas of Coshocton County, Ohio, in January of 2014, naming Oxford Resources Gp, LLC, and the Administrator of the Ohio Bureau of Workers' Compensation as defendants. ECF No. 241 at 8; ECF No. 251 at 3; ECF No. 241-21 at 2-4. None of the Defendants in this case were involved in defending Lucas' Ohio actions, and Lucas does not allege that they could have been or should have been so involved.

Lucas' second complaint in the Ohio Court of Common Pleas alleged that he suffered work-related injuries at Oxford Mining due to his exposure to ACES II. ECF No. 241-21 at 2-4. Lucas complained of chemically-induced headaches, convulsive and intractable epilepsy, and chemically-induced encephalopathy. ECF No. 241-21 at 3. Before the Ohio court ruled, however, the parties agreed to dismiss the case with prejudice after reaching a mutually-agreeable settlement, and the Ohio court did so without vacating the decision of the Ohio Industrial Commission. ECF No. 241 at 8; ECF No. 241-22 at 2; ECF No. 251 at 3. The Ohio court's order dismissing the case stated: "Case settled and dismissed with prejudice by agreement of the parties. No record. Costs are to be paid by the Plaintiff." ECF No. 241 at 8; ECF No. 241-22 at 2; ECF No. 251 at 3. Judge Batchelor of the Ohio Court of Common Pleas signed and approved the order, as did counsel for all of the parties to that case. ECF No. 241-22 at 2.

## II. LEGAL STANDARD

A party is entitled to summary judgment if it can show that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine

issue of material fact is one that 'affects the outcome of the suit under the governing law' and could lead a reasonable jury to return a verdict in favor of the nonmoving party." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Initially, the moving party bears the burden of demonstrating that the evidentiary record presents no genuine issue of material fact. *Willis*, 808 F.3d at 643. If it does so, the burden shifts to the nonmoving party to "identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden . . . the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643. Inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In cases such as this, where cross motions for summary judgment have been filed, each party essentially contends that no genuine issue of material fact exists from its particular point of view. The Court therefore considers each motion for summary judgment separately. *Home for Crippled Children v. Prudential Ins. Co.*, 590 F. Supp. 1490, 1495 (W.D. Pa. 1984). Each party bears the burden of establishing a lack of a genuine issue of material fact. *See id.* But the parties' contradictory claims do "not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives ... determination [of] whether genuine issues of material fact exist." *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Moreover, the standards under which a court grants or denies summary judgment do not change when considering cross motions. *Home for Crippled Children*, 590 F. Supp. at 1495.

## III. ANALYSIS

### A. Defendants' Motion for Summary Judgment (ECF No. 239)

In their Motion for Summary Judgment, Defendants argue that Lucas' claims are barred by the doctrine of issue preclusion (also known as collateral estoppel) because causation of Lucas' injuries was fully litigated and conclusively determined in an Ohio court of record. Defendants say that either or both of the prior decisions—in the Ohio workers' compensation administrative proceeding and/or of the Ohio Court of Common Pleas, where Lucas' appeal was dismissed with prejudice with the agreement of the parties—should be given preclusive effect as to the causation element of Lucas' claims. ECF No. 239.

The federal full faith and credit statute, codified at 28 U.S.C. § 1738, requires federal courts to accord a state court judgment the same preclusive effect that it would have had in a court of that state. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380-81 (1985). It "does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-82 (1982). "Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Id.* at 482.

Under Ohio law, "[i]ssue preclusion 'precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action.'" *MetroHealth Med. Ctr. v. Hoffmamn-LaRoche, Inc.*, 685 N.E.2d 529, 533 (Ohio 1997), (quoting *Krahn v. Kinney*, 538 N.E.2d 1058, 1062 (Ohio 1989). It applies where "the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994).

9

The Ohio Supreme Court has held that "a consent judgment operates as *res judicata* to the same extent as a judgment on the merits." *Horne v. Woolever*, 163 N.E.2d 378, 382 (Ohio 1959), *cert denied* 362 U.S. 951. "The term 'with prejudice' is the converse of 'without prejudice'; and, where a party to an action consents to a judgment of dismissal 'with prejudice,' such judgment concludes the rights which he did assert or should have asserted therein to the same extent as they would have been concluded if the action had been prosecuted to a final adjudication against those rights." *Id.* "Implicit in the rule is the recognition that a judgment entered by consent, although predicated upon an agreement between the parties, is an adjudication as effective as if the merits had been litigated and remains, therefore, just as enforceable as any other validly entered judgment." *In re Gilbraith*, 512 N.E.2d 956, 959 (1987).

Issue preclusion may also prevent re-litigation of an issue in federal court where the prior adjudicative body was a state administrative agency. The United States Supreme Court has held that "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)).

Ohio courts likewise accord findings made in administrative hearings preclusive effect in subsequent judicial proceedings. This is permitted where (1) the administrative body acted in a judicial capacity, (2) there is an identity of parties and issues, (3) the administrative body resolved factual disputes that were clearly relevant to the issues before it, and (4) the parties have had a full and fair opportunity to litigate and seek review of any adverse findings. *In re Foster*, 280 B.R. 193, 203 (Bankr. S.D. Ohio 2002) (citing *Superior's Brand Meats, Inc. v. Lindley*, 403 N.E.2d

996, 999 (Ohio 1980); *Pullar v. UpJohn Health Care Services, Inc.*, 488 N.E.2d 486, 490 (Ohio Ct. App.1984)).

The administrative body at issue here is the Ohio Industrial Commission. The Ohio Supreme Court has held that decisions rendered by that body may be entitled to preclusive effect. *Res judicata* "applies to proceedings before the Industrial Commission." *State ex rel. Kroger Co. v. Indus. Comm'n of Ohio*, 687 N.E.2d 768, 770, (Ohio 1998). Indeed, an unreversed final decision by that body can have preclusive effect in Ohio courts, *State ex rel. Crisp v. Indus. Comm'n of Ohio.*, 597 N.E.2d 119, 120 (Ohio 1992), so long as the parties "have had ample opportunity to litigate the issues involved in the case." *Cooper v. Adm'r of Ohio Bureau of Workers' Comp.*, Nos. CA99-07-082, CA99-09-108, 2000 WL 710082, at *3 (Ohio Ct. App. May 30, 2000). The same holds true on a theory of issue preclusion with respect to the Ohio Industrial Commission's determinations on discrete issues if such issues were actually and necessarily decided by that body. *See, e.g.*, *State ex rel. Kroger Co. v. Indus. Comm'n of Ohio*, 687 N.E.2d 768, 771-72 (Ohio 1998); *State ex rel. Crisp v. Indus. Comm'n.*, 597 N.E.2d 119, 120 (Ohio 1992); *Lasko v. G.M.C.*, No. 2003-Ohio-4103, 2003 WL 21782622, at *6 (Ohio Ct. App. August 1, 2003).

Federal courts have likewise given findings of the Ohio Industrial Commission preclusive effect. Where (1) the Commission acted in a judicial capacity, (2) there was mutuality of both parties and issues, (3) the Commission resolved relevant contested factual disputes, and (4) the parties had a full and fair opportunity to litigate such issues and seek review of the Commission's decision, "the factual findings of the Industrial Commission" are "given the same preclusive effect" in federal court as "they would be entitled to in an Ohio court." *In re Foster*, 280 B.R. 193, 201 (Bankr. S.D. Ohio 2002) (according the Commission's determination on the issue of fraud preclusive effect in a subsequent federal bankruptcy action); *see also In re Damron*, 457 B.R. 662,

11

667 (Bankr. S.D. Ohio 2011) (same); *Burress v. Sears, Roebuck & Co.*, No. 95-cv-110, 1996 WL 581629, at *2 (S.D. Ohio July 17, 1996) (according the Commission's determination on the issue of a worker's injury preclusive effect in a subsequent federal employment discrimination action).

Here, however, the Court concludes that neither the Ohio Industrial Commission's determination of causation nor the Ohio Court of Common Pleas' subsequent dismissal of Lucas' appeal with prejudice is entitled to preclusive effect in this case. That is because—unlike in federal courts and the courts of many states, where there need only be privity with the parties against whom issue preclusion is asserted (so-called non-mutual issue preclusion)—Ohio's issue preclusion doctrine generally requires mutuality, whether the doctrine is wielded offensively or defensively. In other words, a prior "judgment can operate as collateral estoppel only where all of the parties to the proceeding in which the judgment is relied upon were bound by the [prior] judgment," either because the parties to the current proceeding were "parties to the original judgment" or because they are "in privity with those parties." *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 981, 987 (Ohio 1983). The Court concludes in this case that as to both the Ohio Industrial Commission workers' compensation proceeding and the Ohio Court of Common Pleas decision, the mutuality requirement is not satisfied.

To be sure, Ohio's mutuality requirement has a vexing history. *See Kiara Lake Estates, LLC v. Bd. of Park Comm'rs O.O. McIntyre Park Dist.*, No. 13-cv-522, 2014 WL 773437, at *5 (S.D. Ohio Feb. 24, 2014) (noting that cases where the Ohio Supreme Court abandons the mutuality requirement are equally plentiful to those holding that the mutuality requirement remains alive and well).[3] But there is no question that mutuality has generally been required:

---

[3] *Compare, e.g., Progressive Plastics, Inc. v. Testa*, 979 N.E.2d 280, 285 (Ohio 2012) (concluding that there must be "an identity of issues and an identity of parties or their privies in both the first and the second suit."); *State ex rel. Davis v. Pub. Emps. Ret. Bd.*, 899 N.E.2d 975, 982 (Ohio 2008) (subsequent action must be between "the same parties or their privies" for issue preclusion to apply); *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 779 N.E.2d

12

As a requisite factor in the application of the principle of issue preclusion within the doctrine of res judicata, Ohio cases over the years in like manner have consistently held to the effect that a judgment can operate as collateral estoppel only where all of the parties to the proceeding in which the judgment is relied upon were bound by the judgment. Expressions are found within the cases that the record of a judgment, in order to preclude either of the party litigants, must be preclusive upon both. The operation of the rule must be mutual. If a judgment cannot be effective as res judicata against a particular person, he cannot avail himself of the adjudication and contend that it is available against others, as between them and himself. Therein lies the general rule of mutuality of estoppel which has long been applied by this court and other courts in Ohio. There being the general requisite of an identity of persons and parties, or their privies, within the prior proceeding in order for the judgment or decree to operate as an estoppel, strangers to such a judgment or decree will not be affected thereby. . . .

Whether or not we, in the future, may conclude it to be advisable to adopt the nonmutuality rule as a general proposition, for the present we reaffirm our prior general stance that collateral estoppel may generally be applied only when the party seeking to use the prior judgment and the party against whom the judgment is being asserted were parties to the original judgment or in privity with those parties.

*Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d at 981-82, 987.

In more recent cases, however, the Ohio Supreme Court has cast some doubt on whether the state's mutuality rule continues to apply across the board:

> In order to invoke res judicata, one of the requirements is that the parties to the subsequent action must be identical to or in privity with those in the former action. We have recognized that the concept of privity for purposes of res judicata is somewhat amorphous. Despite this characterization, we have applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine. A contractual or beneficiary relationship is not required. But the relationship between co-employees subject to the same employment-related contract, without more, does not establish privity.
>
> In addition, an interest in the result of and active participation in the original lawsuit may also establish privity. Similarly, a mutuality of interest, including an identity of desired result, may create privity. Mutuality, however, exists only if the person taking advantage of the judgment would have been bound by it had the result been

---

216, 219 (Ohio 2002) (same); *and* 63 Ohio Jur. 3d Judgments § 376 (citing as authoritative the "same parties or their privies" requirement); *with Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994) (mutuality not necessarily required for issue preclusion); *New Winchester Gardens v. Franklin Cnty. Bd. of Revision*, 684 N.E.2d 312, 316 (Ohio 1997), *overruled on other grounds by Cummins Prop. Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 885 N.E.2d 222, 229 (Ohio 2008), (same); *and* 63 Ohio Jur. 3d Judgments § 376 (noting that "there is no general requirement that the party asserting collateral estoppel have been a party to the prior action.").

> the opposite. Conversely, a stranger to the prior judgment, being not bound thereby, is not entitled to rely upon its effect for res judicata.
>
> Finally, we have held that issue preclusion applies likewise to those in privity with the litigants and to those who could have entered the proceeding but did not avail themselves of the opportunity.

*State ex rel. Schachter v. Ohio Pub. Emps. Ret. Bd.*, 905 N.E.2d 1210, 1216-17 (Ohio 2009); *see also Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994).

In any event, the upshot of the Ohio Supreme Court's back and forth appears to be that Ohio's requirement of "mutuality endures, though it may be relaxed in the interests of justice," such as where there is at least "*substantial identity* of the parties and issue preclusion is invoked against a party who had a full and fair opportunity to contest the issue previously." *Kiara Lake Estates,* 2014 WL 773437, at *5 (emphasis added) (citing *In re Gilbraith*, 512 N.E.2d 956, 961 (Ohio 1987)).

In this case, the evidence of record is insufficient to establish that Defendants are either in privity with Oxford Mining Company, the respondent/defendant in the prior Ohio actions, or that they are in substantial enough privity such that the interests of justice weigh in favor of allowing them to invoke issue preclusion.

Although Defendants here desire the same basic outcome as did Oxford Mining Company in the Ohio actions (a finding that Lucas has not established that Defendants' chemicals caused his injuries), the Ohio Supreme Court has made at least one thing clear: a shared interest in the outcome alone is not sufficient. *See State ex rel. Schachter*, 905 N.E. 2d at 1217 ("an interest in the result of *and active participation in the original lawsuit* may also establish privity;" "a mutuality of interest . . . may create privity," but mutuality "exists *only if the person taking advantage of the judgment would have been bound by it had the result been the opposite. . . .* "issue preclusion applies likewise to those in privity with the litigants and to *those who could have entered*

14

*the proceeding but did not avail themselves of the opportunity.*") (emphasis added). Defendants here do not contend that they actively participated in Lucas' workers' compensation case, that they could have participated in it, or that they would be bound to accept the judgment in that case had Oxford Mining Company lost.

Turning to the interests of justice prong, the circumstances in which the Ohio Supreme Court has relaxed its otherwise strict mutuality requirement on these grounds are few and far between. This Court is not aware of, and Defendants have not cited to, any case where the mutuality requirement has been relaxed in circumstances analogous to those present here.

What's more, the Court concludes that a number of important practical considerations counsel against the application of issue preclusion to decide the issue of causation in the particular circumstances present in this case. The amount at issue in Lucas' workers' compensation proceeding was undoubtedly much less than is at issue in this case. The respondent in that proceeding was a buyer of the chemical rather than, to use the Defendants here as an example, the main manufacturer or a central distributor of the chemical whose businesses may have been more heavily impacted by a finding that it is dangerous. As a result, neither party to the workers' compensation proceeding can be said to have had anywhere near the same measure of incentive to fully litigate the issue of causation.

In addition, Lucas almost certainly did not have the same level of opportunity to conduct discovery as he does here. To give but one example, there is no record evidence that Lucas did or could have discovered the precise chemical contents of ACES II in order to establish causation in his workers' compensation proceeding. In fact, Defendants in this case have for years steadfastly refused to release the full chemical composition of ACES II because they claim it is a trade secret. *See, e.g.*, ECF No. 215 at 2 (portions of the chemical contents of ACES II still have not been

15

disclosed in this case). They say that only one person on the face of the Earth knows for sure what chemicals ACES II contains and in what amounts: Moshe Tal, who was not a party and could not have been a party to the workers' compensation proceeding. *See, e.g.*, ECF No. 98 at 2 ("The only person who knows the formula for ACES II is Moshe Tal."); ECF No. 214-1 at 32 ("Q. Who would be the person that knows all of the ingredients to [ACES II]? A. Only Mr. Tal. It's like [] Coca-Cola."). So it is clear that even if Lucas had the opportunity to conduct meaningful discovery in his workers' compensation proceeding, he would likely have been at a severe disadvantage on the issue of causation due to the absence of the availability of information concerning ACES II's chemical composition.

Thus, because the requisite level of mutuality is not satisfied in this case, and because the Court concludes that Ohio courts would not relax the mutuality requirement in the interests of justice given the circumstances present here, the Defendants' Motion for Summary Judgment, ECF No. 239, will be denied.

### B. Plaintiff's Motion for Partial Summary Judgment (ECF No. 192)

Lucas argues in his Motion for Partial Summary Judgment that he is entitled to judgment as a matter of law on the issue of Defendants' liability, leaving for determination only the amount of his damages. ECF No. 193 at 1. In support, Lucas says there is no genuine dispute that Defendants violated certain federal regulations, that they were negligent or negligent *per se*, and that such breaches of their duties to him caused his array of injuries. *See* ECF No. 26 at 1, 3, 5-7; ECF No. 192; ECF No. 193 at 1-2; ECF No. 194 at 10.

Lucas' main arguments can be adequately summarized as follows. First, Lucas says that he is entitled to judgment on a theory of strict liability for the harm he allegedly suffered from exposure to ACES II because ACES II was defective. The defect, Lucas says, was Defendants'

16

failure to warn Lucas of the dangers associated with that chemical mixture. *See* ECF No. 193 at 3-5. Next, Lucas argues that he is entitled to judgment on a theory of negligence for such harm. This, he says, is due to Defendants' failure to warn him of the dangers of toluene, one of the chemicals in ACES II. *See* ECF No. 193 at 5-7. Finally, Lucas argues that he is entitled to judgment on a theory of negligence *per se* for Defendants' violation of federal regulations related to the Hazard Communication Act, codified at 29 C.F.R. 1910.1200, *et seq.* These regulations, Lucas contends, make it unlawful to manufacture or sell hazardous chemicals without assessing the dangers of such chemicals and communicating them to employees. *See* ECF No. 193 at 7-9.

The Court need not explore the legal underpinnings of Lucas' arguments in significant detail. At least three pivotal disputes as to material facts preclude the Court from entering summary judgment in Lucas' favor.

Lucas acknowledges in his papers that each of his theories for Defendants' liability critically relies upon establishing that ACES II posed a danger to him due to the hazardous nature of its chemical components and the amount in which such components were present. *See* ECF No. 193 at 3-9. But Lucas' allegation that ACES II posed a danger is hotly contested by medical doctors on both sides of this case. *Compare, e.g.*, ECF No. 199 at 24-32 (affidavit of Dr. Michael Dogali, concluding among other things that the amount of toluene present in ACES II can cause central nervous system damage, progressive organic mental syndrome with memory loss, personality change, severe headaches, and seizures) *with* ECF No. 214-5 (report of Dr. Kenneth Mankowski, concluding among other things that there is no evidence Lucas has suffered toxic exposure or effect from the chemicals in ACES II and that any symptoms he experienced cannot be the proximate result of his work exposure to such chemicals) *and* ECF No. 214-13 (report of Dr. John Cunningham, concluding among other things that Lucas may not have experienced any seizures

17

and that Lucas' exposure to ACES II is not causally related to any seizures Lucas may have experienced).

Lucas also acknowledges that each of his theories critically relies upon establishing that ACES II actually caused his injuries. *See* ECF No. 193 at 3-9. But like his allegation that ACES II poses a danger, Lucas' claim that ACES II caused his injuries is also vigorously disputed by medical doctors on both sides of the case. *Compare, e.g.*, ECF No. 199 at 24-32 (affidavit of Dr. Michael Dogali, concluding among other things that Lucas suffered central nervous system damage from toluene consistent with his exposure to ACES II while working at Oxford Mining) *with* ECF No. 214-5 (report of Dr. Kenneth Mankowski, concluding essentially the opposite) *and* ECF No. 214-13 (report of Dr. John Cunningham, similar).

Lucas additionally acknowledges that each of his theories critically relies upon Defendants' alleged failure to warn Lucas of the dangers of ACES II by failing to put warning labels on the ACES II containers and/or failing to make adequate disclosures concerning the dangers of toluene on the MSDS sheets. *See* ECF No. 193 at 3-9. But the parties hotly contest the presence of warning labels on the product. *Compare, e.g.*, ECF No. 194-5 at 21, 24-25 (deposition of Lucas, in which he says that the drums of ACES II had no warning labels of any kind) *with* ECF No. 214-1 at 3, 13-14 (deposition of Jay Hill, President of ACES, describing the warning labels affixed to the drums of ACES II) *and* ECF No. 214-2 at 6 (deposition of William Moffat, a distributor of ACES II, describing the same). The parties also dispute whether the warnings contained on the ACES II MSDS sheets were adequate to warn Lucas of the dangers associated with ACES II (*see* ECF No. 194 at 9; ECF No. 214 at 20; ECF No. 220 at 20), the answer to which question rests squarely upon the contested issue of whether ACES II in fact posed any danger to Lucas.

18

To sum up, it is abundantly clear that at least the following remain central and disputed issues of material fact in this case: the risks or lack thereof associated with handling ACES II in given amounts and in particular contexts, the presence of certain warning labels, the adequacy of certain warning labels in light of ACES II's alleged dangers, and the causation of Lucas' injuries. Such disputes preclude summary judgment for Lucas because they cannot be resolved in his favor as a matter of law.[4] Lucas' Motion for Partial Summary Judgment, ECF No. 192, will therefore be denied.

## IV. <u>CONCLUSION</u>

For the above reasons, Defendants' Motion for Summary Judgment (ECF No. 239) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 192) will be denied in their entirety. An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: August 17, 2017

cc: All counsel of record

---

[4] The parties dispute whether the Court can consider Dr. Dogali's affidavit, Dr. Mankowski's report, and/or Dr. Cunningham's report at the summary judgment stage of this case on the grounds that such documents may later be deemed inadmissible as hearsay under Fed. R. Evid. 801 or improper expert opinions under the standards of Fed. R. Evid. 702 and/or *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). The Court concludes that it can. All three doctors appear to be eminently qualified under the requisite evidentiary standards. None of the parties in this case have requested a *Daubert* hearing or offered the Court any substantial reason to doubt the doctors' qualifications, the principles and methods they used, the general acceptance of such principles and methods, or that such principles and methods were applied reliably in this case. Nor has any party offered the Court a substantial reason why, if each side called its respective doctor(s) at trial, they could not testify to everything set forth in their respective affidavits and reports. In addition and in the alternative, if the Court concluded instead that it would not at this stage consider evidence from the parties' respective doctors, we would circle back to the same spot: absent any such testimony, there would remain at least as many disputed issues of fact with regards to the risks or lack thereof associated with handling ACES II in given amounts and in particular contexts, the presence of certain warning labels, the adequacy of certain warning labels in light of ACES II's alleged dangers, and the causation of Lucas' injuries.